**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **WALTER CHAD TROUTMAN,** | § | |
| | § | |
| **V.** | § | **A-14-CV-986-DAE** |
| | § | |
| **WILLIAMSON COUNTY AND ITS** | § | |
| **SHERIFF'S DEPARTMENT** | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE DAVID EZRA
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Williamson County and its Sheriff's Department's Motion for Summary Judgment, Dkt. No. 21, Plaintiff Walter Chad Troutman's Response, Dkt. No. 35, and the County's Reply, Dkt. No. 37. The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

**I. BACKGROUND**

In this case, Plaintiff WalterTroutman, a former Williamson County Sheriff's Deputy, sues his former employer, alleging that he was terminated both for having a disability and as retaliation for his participation in a co-worker's discrimination suit, in violation of the Americans with Disabilities Act ("ADA"), and Texas Labor Code § 21.051, *et.seq*. The County has moved for summary judgment, arguing that Troutman was terminated for non-discriminatory and non-retaliatory reasons. Dkt. No. 21 at 1. Specifically, the County argues that Troutman had a 15 year "history of substandard performance, culminating in Troutman's admitted lie to a supervisor (relating to a false request for leave to care for an ailing mother—which Troutman admits was untrue) in order to obtain

a paid day off." *Id*. at 1-2.  The County further argues that Troutman was not disabled, was not regarded as disabled, and had no record of disability.  *Id*. at 2.  The County filed its motion on July 20, 2015.  Troutman subsequently filed several motions seeking an extension of time to file a response to the County's motion, purportedly to gather evidence.  Dkt. Nos.  25, 26, 27, 31.  Troutman finally filed his response to the County's motion on November 30, 2015.  Dkt. No. 32.  The County filed a reply to Troutman's response.  Dkt. No. 33.

## II.  STANDARD

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere

conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id*. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

### III.  ANALYSIS

A.     **Undisputed Facts**

The facts are basically undisputed. Troutman suffers from sleep apnea, a respiratory disorder which makes it so difficult to breathe that he experiences many a restless night. Dkt. No. 35 at 25-26 (Troutman's deposition). As a result, Troutman is fatigued throughout the day, causing him to have difficulty staying awake and remaining focused on the tasks before him. *Id*. In 2005, on a doctor's advice, Troutman asked his supervisor whether he could take Ritalin, an amphetamine-based medication used to treat sleep apnea. *Id*. at 35. His supervisor denied him permission to take Ritalin.

*Id*. The record reflects that this is the sole time that Troutman made any request that could be construed as seeking an accommodation for his sleep apnea. Notably, he testified in his deposition that he later was taking a medication that is "just like Ritalin." *Id*.

In early 2012, Kevin Jones, another former Sheriff's Deputy, filed suit against the County, asserting disability, retaliation, and wrongful termination claims. Dkt. No. 21-17. Troutman explains his retaliation claim as follows: " I felt that they [the County] opposed why—they opposed me talking to him [Jones] and I—providing information that was in conflict, I'm assuming, with the County's position in his lawsuit." Dkt. No. 35 at 35. Though he at times referred loosely in his deposition to being retaliated against because the County thought he was speaking with "Jones and attorneys and investigators," he testified unequivocally that he only ever spoke with Jones, and never met with Jones' attorneys or investigators. *Id.* at 36. Troutman alleges that after he supported Jones' suit, he began suffering discrimination, harassment, and retaliation by the County. Specifically, Troutman alleges that after Sergeant Kelli Bomer became his supervisor in October 2012 he received formal disciplinary write ups for minor infractions, was denied the opportunity for training that would have advanced his career, and was placed on a Personal Improvement Program for substandard work performance. Dkt. No. 35 at 38, 33; Dkt. No. 21-2 at 72. Ultimately, a Disciplinary Review Board recommended Troutman's termination because it found that, while he was under the improvement plan, he had lied to his supervisor in order to get a paid day off, and Troutman was terminated.

**B.     Disability Discrimination Claim**

Because Troutman relies solely on circumstantial evidence to show discrimination, the Court analyzes the claim using the *McDonnell Douglas* burden-shifting analysis. *See McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279 (5th Cir. 2000) (citing *McDonnell Douglas Corp. v. Green*, 411

4

U.S. 792 (1973)). Under that rubric, the Court first determines if the plaintiff can establish a prima facie case of discrimination. If the plaintiff makes that showing, the burden then shifts to the employer to articulate a "legitimate, non-discriminatory reason for the adverse employment action." *Id.* at 280. If the employer articulates such a reason, the burden shifts back to the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely "a pretext for unlawful discrimination." *Id.* (citation omitted). The County argues both that Troutman has failed to make out a prima facie case of discrimination, and that it had legitimate, non-discriminatory reasons for firing him.

As noted, Troutman claims that he was fired was because he suffers from sleep apnea, which he contends renders him disabled under the ADA. To make a prima facie case, Troutman must establish that: (1) he is disabled within the meaning of the ADA, (2) he is qualified and able to perform the essential functions of his job, and (3) his employer fired him because of his disability. *Kemp v. Holder*, 610 F.3d 231, 235 (5th Cir. 2010). The County argues that Troutman has failed to demonstrate he was a "qualified individual with a disability," or that he was fired "because of his disability."[1]

The ADA defines a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting,

---

[1]The County's evidence in support of its argument that Troutman has failed to show that he was fired "because of his disability" is essentially the argument that he was fired for legitimate, non-discriminatory reasons. Rather than repeat itself, the Court will address the causation argument and the "legitimate non-discriminatory reasons" argument together, *infra.*

bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A).  Troutman stated that his sleep apnea causes him to have difficulty sleeping, and therefore difficulty staying alert during the day. Dkt. No. 35 at 25-26. He has sought treatment for his sleep apnea from several doctors over the course of nearly two decades. *Id*.  This is sufficient to show that Troutman has made out at least a prima facie case that he is a person with a disability for the purposes of this suit.

The County argues that Troutman was terminated not because of his disability but because his performance was substandard.  In support, it points to several instances where Troutman was disciplined at work.  In 2005, Troutman was disciplined for falling asleep behind the wheel of a moving vehicle. Dkt. No. 21-2 at 50-51.  That same year he was ordered to appear before a County Disciplinary Review Board for using his wife's prescription medication. *Id*. at 51-52.  In 2006, he was disciplined for making frequent stops at his own residence while on patrol. *Id*. at 52.  In 2011, he was disciplined for driving a vehicle into a gate, damaging it. *Id*. at 52-53.

Troutman's real trouble, however, began when Sergeant Kelly Bomer began supervising him in October 2012.  That month, Bomer sent a memorandum to her new subordinates, outlining her expectations. Dkt. No. 21-5.  Among other things, Bomer set out that "show up is at 0545;" "if you must call in sick I expect a phone call not a text;" an officer's "uniform will be clean, wrinkle free and . . . have shined boots;" officers will "stay in district until 1800;" officers will "use the chain of command;" an officer will be a "proactive Deputy by doing futher investigations on reports, increase traffic contacts, searches, warrant services, community projects, etc.;" and that mediocrity "is not acceptable." *Id*. Bomer found Troutman's work unacceptable, and she disciplined him five times that spring. Specifically, he was written up for the following behaviors:

6

1.   March 14, 2013:   Failing to report a felony offense on February 25, 2013. Dkt. No. 21-6.

2.   April 22, 2013:   Failing to properly document a "hold" placed on a vehicle on April 13, 2013. Dkt. No. 21-7.

3.   May 6, 2013:   Two instances of mishandling evidence: contaminating and failing to turn in evidence from an April 13, 2013 investigation until May 1, 2013, and failing to turn in evidence from an April 8, 2013 investigation until May 1, 2013. No. 21-8 at 1. The evidence had been in the trunk of Troutman's car. Dkt. No. 21-9 at 1.

4.   May 6, 2013:   Failing to fill out his time sheet and lying to Bomer about it on April 26, 2013. *Id*. at 2.

5.   May 6, 2013:   Being late for work due to oversleeping and arriving with an unclean, unpressed uniform without his required identifying badge or name plate on May 6, 2013. The write up stated that this had "happened at least 3 times in the past several months." *Id*. at 3.

Also on May 6, 2013, Lieutenant Tony Carter sent a memorandum to Captain Mike Gleason laying out why he believed Troutman's performance was unsatisfactory, stating, among other things, that Troutman "continues to not comply with simple rules and procedures of this organization" and had "become a burden to supervise." Dkt. No. 21-9. Carter's memorandum also mentioned that Troutman had been "verbally counseled in the past" for "oversleeping to where he would have to be called in the morning to come to work." *Id*.

On May 10, 2013, Troutman met with his supervisors and waived an Internal Affairs investigation into his conduct, instead agreeing to certain disciplinary measures, among them mandatory time off without pay, a prohibition on off-duty work, and Troutman's placement on a Personal Improvement Program to be conducted by Bomer. Dkt. No. 21-10 at 1-3. On June 18, 2013, Bomer submitted her first evaluation of Troutman's Personal Improvement Program. Dkt. No. 21-

11 at 1. She stated that Troutman had made some improvements, such as correcting his uniform and being more willing to assist his fellow officers. *Id*. However, she also found that Troutman still had a tendency to loaf, to avoid substantive work and instead did "busy work" and made "noise on the radio to appear that he had enhanced his activity." *Id*. Bomer also rated on a ten point scale Troutman's performance under certain criteria, such as Awareness, Communication, Analysis, Initiative, and Timeliness. *Id*. at 3-5. Bomer gave Troutman ratings of 3-5 in most categories, signifying that Troutman was either satisfactory or needed improvement. On "Timeliness," defined as "arrives at work on time and in adherence to departmental policy; keeps commitments for Court appearances," Bomer rated Troutman at 7, signifying "highly effective." *Id*. at 4.

On July 5, 2013, Bomer filed another complaint, alleging that Troutman had been "dishonest regarding his need for sick leave." Dkt. No. 21-12 at 1. As part of her complaint, Bomer had Troutman write a memorandum to her, detailing his dishonesty. *Id*. at 4-5. In it, Troutman explained that on June 26, 2013, he called Sergeant Randy Batton and

> explained to him that I needed the following day off to take my mother to a scheduled doctor's visit. However, this was not the case. In truth, my mother does have the condition I gave. She does require regular follow ups but I was not taking her. The actual reason I took off was because I was tired from lack of sleep and heavy stress brought on mainly by the very real likelihood my house would be foreclosed on as well as several other factors.

*Id*. at 4. When Bomer asked Troutman "why he was not honest from the beginning, he said that he was afraid that this information would make him appear weak." *Id*. at 2. Bomer concluded that Troutman may have violated Williamson County Rules of Conduct by lying to his supervisors, and recommended that Internal Affairs investigate the incident. *Id*. Troutman's poor performance continued even while under investigation. In Bomer's second evaluation of Troutman's Personal

Improvement Program, dated August 17, 2013, she noted that Troutman had failed to properly follow up with a victim in a domestic violence incident on July 25, 2013, and had failed to fill in his time card on August 16, 2013. Dkt. No. 21-13.

Internal Affairs later issued a report regarding Troutman's dishonesty about taking sick leave. Dkt. No. 21-15. The investigator, Detective James Knutson, stated that when he met with Troutman about the incident Troutman once again admitted to lying about why he was out of work. *Id*. at 2. Troutman stated that the reason he had been feeling ill was stress related to his finances. *Id*. After reviewing the other allegations against Troutman, Knutson sustained the accusations that Troutman had violated the County's Rules of Conduct by having an unsatisfactory performance, a violation of #200-001-5 C, and untruthfulness, a violation of #200-001-37 C. *Id*. at 7-8. As a result of the Internal Affairs investigation, a Disciplinary Review Board meeting was held at which Troutman was present. Dkt. No. 21-2 at 78. The Board, made up of the entire chain of command, including Bomer, voted unanimously that Troutman be terminated because of these violations. Dkt. No. 21-3 at 1.

Troutman does nothing to create a genuine dispute regarding these facts. The County's decision was made through a formal review process, including a Disciplinary Review Board and an Internal Affairs investigation. At all stages Troutman was able to defend himself against any accusations. The decision was made after Troutman had been put on a Personal Improvement Program, and thereby given the chance to correct his substandard performance. Yet Troutman continued to do unsatisfactory work, even when he was on notice that he needed to improve. And while it is true that Troutman was reprimanded more frequently after Bomer became his supervisor, Bomer laid out her expectations to her staff at the very beginning of her term, and Troutman has presented no evidence and makes no argument that she treated him any differently than the other

deputies under her command. And while Troutman may question whether Bomer's decision to write him up for particular offenses was a good use of her discretion, the violations for which he was cited were investigated by Internal Affairs and were found to be termination-worthy nonetheless.

Since the County has articulated a legitimate, non-discriminatory reason for terminating Troutman's employment, the burden shifts to Troutman to establish by a preponderance of the evidence that these stated reasons are merely a pretext for what was actually unlawful disability discrimination. "Merely disputing [the County's] assessment of his performance will not create an issue of fact. The issue at the pretext stage is whether [the County's] reason, even if incorrect, was the real reason for [Troutman's] termination." *Sandstad v. CB Richard Ellis, Inc.* 309 F.3d 893, 899 (5th Cir. 2002) (internal citation omitted). Thus, Troutman must produce evidence that the County's motive for terminating him was disability-based animus or that the County's explanation is false. *See, id.* (applying pretextual analysis to age discrimination context).

Troutman completely fails to meet his burden. Indeed, he provided scant evidence that connects his termination to the symptoms or effects of his sleep apnea. He even stated at his deposition that he was unaware of *any* evidence that he was fired because of his disability. Dkt. No. 35 at 37. The only potentially relevant evidence he offers is his testimony that he told his supervisors about his sleep apnea, including telling his Sergeant in 2006 that because of it he "had a tendency to sleep very hard," that it was hard for him to hear his alarm clock, thereby causing him to be late sometimes. Dkt. No. 35 at 35. This is the full extent of Troutman's evidence of "pretext," and it is plainly insufficient. He has failed to connect the sergeant with whom he discussed his sleep apnea—in 2006—in any way with his termination. Moreover, the passage of seven years between this discussion and his termination by itself precludes concluding there is any connection between the

two. And, more to the point, Troutman fails to dispute in any way the County's stated reasons for placing him on a Personal Improvement Program, or its subsequent finding that he violated the code of conduct by his dishonesty.

The only other responsive argument Troutman makes is a weak assertion that the County failed to engage in the interactive process of accommodating his sleep apnea. Dkt. No. 1 at 6. Troutman states that in 2005—eight years before his termination—he asked his supervisor for permission to take Ritalin, an amphetamine-based stimulant, at work, and that permission was denied. Dkt. No. 35 at 35. Troutman contends that this amounted to a failure by the County to accommodate his disability or to engage in an interactive discussion about accommodating it. However, Troutman conceded that after this single discussion he never again mentioned a need to accommodate his sleep apnea to any supervisors. *Id*. Setting aside whether or not permission to take a prescription medication is an "accommodation" under the ADA,[2] other than the one request in 2005, Troutman appears to have failed to attempt to initiate any sort of process with the County regarding his disability. This evidence is insufficient to demonstrate that the County failed to engage in an interactive discussion regarding accommodating Troutman's sleep apnea.

For all of these reasons, the Court recommends that the County's motion be granted on tjis claim, and Troutman's ADA discrimination claim be dismissed.

**B.    Whether Troutman's Termination was Retaliatory**

Troutman also contends that he was fired in retaliation for supporting Kevin Jones' discrimination case against the County. To establish a prima facie case of retaliation, a plaintiff must

---

[2]There is no evidence in the record of what precipitated Troutman requesting permission to take a medication that he had been prescribed, why he believed he needed permission, or whether any County rules required such permission.

establish that he (1) engaged in a protected activity; (2) was subject to an adverse employment action; and (3) there is a causal link between the protected activity and his termination. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008). If the plaintiff successfully presents a prima facie case, the burden shifts to the employer to provide a "legitimate, non-retaliatory reason for the adverse employment action." *Long v. Eastfield Coll.*, 88 F.3d 300, 304–05 (5th Cir. 1996) (citation omitted). Upon answering this inquiry, the burden returns to the plaintiff to prove that the protected conduct "was a 'but for' cause of the adverse employment decision." *Id.* at 305 n.4 (citation omitted).

Troutman has failed to establish either the first or the third elements of a prima facie case of retaliation. To begin, Troutman has failed to show that he engaged in a protected activity. Troutman's retaliation claim is founded on the assertions that he assisted Kevin Jones in a suit Jones had filed against the County, and that the County terminated Troutman to retaliate against him for that assistance. But there is no evidence that Troutman engaged in any activity relating to Jones' case that is protected. Although at times Troutman referred in his deposition to "speaking with" Jones' attorneys, when asked specifically about that, Troutman conceded that he never had any contact with Jones' attorneys, but rather had only spoken to Jones about Troutman's views regarding whether Jones had handled a call properly. Dkt. No. 25 at 35-36. That call was apparently one of the items of conduct at issue in Jones' suit, and Troutman told Jones that he believed Jones had conducted himself properly on that call. *Id*. However, Troutman never testified on behalf of Jones, did not provide a statement, and was never interviewed or deposed by anyone, either in proceedings related to Jones' civil suit or the internal affairs investigations relating to Jones. Instead, the only evidence before the Court is that Troutman spoke to Jones about the case.

This evidence is insufficient to demonstrate that Troutman engaged in protected activity. The activity protected by the anti-retaliation provisions of the ADA is "oppos[ing] any act or practice made unlawful by [he ADA]," or "ma[king] a charge, testif[ying], assist[ing], or participat[ing] in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 12203(a). Simply speaking to someone else about facts relevant to that person's claim is not engaging in "protected activity." The fact of this case are very similar to those in *Bevill v. Home Depot U.S.A., Inc.*, 753 F.Supp.2d 816 (S.D. Iowa 2009). There, the plaintiff was claiming retaliation based on being a friend of, and having written a letter to, a coworker who was involved in discrimination litigation against their employer. The court concluded this conduct did not amount to protected activity for purposes of a retaliation claim under the ADA, as the letter did not reference discrimination and could not be construed as opposing discrimination, and the employee never complained to anyone that the coworker was being discriminated against. *Id.* The same is the case here, and Troutman has thus failed to establish the first prong of a prima facie case of retaliation.

Even if Troutman could show that he engaged in protected activity, he has no evidence that there is a causal link between his conversations with Jones and his termination. As detailed above, the County has provided undisputed evidence of legitimate, non-retaliatory reasons for terminating Troutman's employment: his substandard performance and violation of the County's code of conduct. The only countering evidence that Troutman offers—other than his speculation—is inadmissible hearsay. First, he points to his deposition testimony that Sergeant David Denson, Troutman's one-time supervisor, told him that Lieutenant Tony Carter, Denson's supervisor, had warned Denson to "watch what he said" to Troutman because Troutman was cooperating with Jones' suit against the County. Dkt. No. 35 at 36. The alleged statement by Lt. Carter-to-Denson-to-Troutman is plainly

13

hearsay, and is not admissible. Troutman testified that he not could recall any person in his chain of command ever mentioning to him his support of Jones or speaking to him about Jones' claims. *Id*. And he did not attach to his response any evidence that anyone ever made mention to him that there was knowledge, much less concern, in the department—official or otherwise—that Troutman was in any way involved with Jones' suit. Indeed, he stated at his deposition that he was unaware of any evidence that links his termination to Jones' claims. *Id*. at 37.

Next, Troutman claims that at a State Office of Administrative Hearings proceeding related to his termination he heard Bomer testify that Carter told her to write Troutman up for every minor infraction in order to retaliate against him for participating in Jones's suit. *Id.* at 30. No transcript of that SOAH hearing is in the record, however, and Troutman's recollection of Bomer's testimony at the hearing—relating the alleged statements of yet another person (Lt. Carter)—is patent inadmissible hearsay as well, and cannot support Troutman's claim. The only "evidence" in the record to support the claim that the County fired Troutman to retaliate against him is Troutman's own subjective belief. *Id*. at 39. That subjective belief, standing alone, is insufficient to support the claim of a causal link between Troutman's termination and his discussions with Jones. The third element of a prima facie retaliation claim is thus also lacking here.

For these reasons, the Court recommends that summary judgment be granted on Troutman's retaliation claim as well.

### III.  RECOMMENDATION

At the end of the day, the Plaintiff's evidence is sorely lacking. Troutman does not dispute that he performed precisely as the County claims, nor does he dispute that he was dishonest with his supervisors. The lack of any evidence to dispute the County's legitimate, non-discriminatory reasons

for terminating Troutman dooms his discrimination claim. Similarly, he presents the Court with no evidence connecting the County's decision to terminate him with him discussing with Jones, Jones' suit against the County. In fact, there is no admissible evidence before the Court that the County was even aware of his conversations with Jones. Given the County's undisputed evidence, and Troutman's complete lack of countering evidence, summary judgment in the County's favor is warranted. Based upon the foregoing, the undersigned **RECOMMENDS** that the District Judge **GRANT** Defendant's Motion for Summary Judgment (Dkt. No. 21) and dismiss Plaintiff Walter Chad Troutman's case with prejudice.

## IV. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 4th day of February, 2016.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE